# IN THE COURT OF APPEALS OF IOWA

No. 20-1032
Filed November 4, 2020

**IN THE INTEREST OF A.B. and I.B.,**
**Minor Children,**

**Y.B., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Mitchell County, Karen Kaufman Salic, District Associate Judge.


        A mother appeals the termination of her parental rights to her children.
**AFFIRMED.**


        William P. Baresel of Prichard Law Office, PC, Charles City, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

        Patrick J. Rourick, Saint Ansgar, attorney and guardian ad litem for minor children.


        Considered by Vaitheswaran, P.J., and Doyle and Ahlers, JJ.

**DOYLE, Judge.**

A mother appeals the termination of her parental rights to her children.

The Iowa Department of Human Services (DHS) first became involved with this family in 2016, when the State charged the mother with child endangerment for leaving five-month-old I.B. alone in the home to go to a bar. The DHS's most recent involvement with the family began in December 2017 when the State charged the father with committing felony domestic abuse assault against the mother, who was pregnant with A.B. When domestic violence continued in the home after A.B.'s birth, the juvenile court adjudicated both children to be in need of assistance (CINA). The court initially placed the children in the father's care but removed the children six months later due to the parents' ongoing interaction and the domestic violence that resulted from it. When the mother failed to improve significantly after nearly two years of DHS involvement, the State petitioned to terminate parental rights.

The juvenile court terminated the mother's parental rights to I.B. under Iowa Code section 232.116(1)(f) (2019) and to A.B. under section 232.116(1)(h). Although paragraphs (f) and (h) differ with regard to the age of the child and the length of removal, the final requirement of each—clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time—is the same. *See* Iowa Code § 232.116(1)(f)(4), (h)(4). To satisfy this element, the State must present clear and convincing evidence to show that the child would be exposed to adjudicatory harm if returned to the parent's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time"

to mean to mean "at the time of the termination hearing"); *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (noting a child cannot be returned to the custody of the parent if doing so would expose the child to any harm amounting to a new CINA adjudication).

The mother claims the children are not at risk of adjudicatory harm if returned to her care because she has never abused or neglected them. She complains that the court instead focused on "a series of small incidents over the course of more than 20 months." But the record shows that the mother's ongoing physical- and mental-health issues impair her ability to ensure the children's safety. The mother's visitation remained supervised two years after the CINA adjudication, and the evidence shows that the children would be at risk of harm without this supervision. In its termination order, the juvenile court quoted from the DHS's termination report:

> [The mother] has repeatedly demonstrated that while she can have meaningful interactions with her children, she has difficulty meeting their needs when she is parenting alone for short periods of time, and this is when interactions are supervised. [The mother] has not been able to progress beyond supervised interactions, and the children do not have protective capacities of their own, so are fully reliant on their adult caretakers to meet their needs. [The mother] believes that she needs help to meet her own basic needs, which makes it unrealistic to suggest she is capable at this time of meeting the needs of her young sons. [The mother] may be making some progress, but will likely need a substantial period of time devoted to her own mental and physical health needs before she is able to focus energy outside of herself.

The evidence shows that the children would be at risk of adjudicatory harm if returned to the mother's care.

The mother also disputes that termination is in the children's best interests. *See* Iowa Code § 232.116(2); *D.W.*, 791 N.W.2d at 706-07 (requiring that the court

"apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights").  In determining best interests, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child."  *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)).  The "defining elements" we consider in making this determination are the child's safety and "need for a permanent home."  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

The mother is unable to provide the safety and permanency needed.  As we have already determined, the children are at risk of harm if returned to the mother's care.  And the record shows the mother is unable to provide a stable and permanent home.  The mother did not work in the two years following the CINA adjudication began and, as a result of her limited financial means, frequently lost housing.  Concerns persist regarding the mother's ability to provide the children with a stable and consistent routine and discipline.  As the juvenile court noted, the mother undoubtedly loves the children.  But "basic safety and supervision concerns" persist some thirty-two months after the DHS first began providing services such that her visits with the children require supervision.  When we compare the length of time the mother has been given to gain insight into these concerns and the skills to correct them with the limited improvement she has made, we agree that termination is in the children's best interests.

Finally, the mother seeks to avoid termination under Iowa Code section 232.116(3), which provides that the court "need not terminate the relationship

between the parent and child" under certain circumstances. Application of section 232.116(3) is permissive rather than mandatory, and it depends on the facts of each case and the children's best interests. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). The mother bears the burden of establishing an exception to termination. *See id.* at 476.

The mother asks us not to terminate parental rights because the children are in the care of a relative. But the children are not in the legal custody of a relative, as is required under section 232.116(3)(a). She also claims that termination would be detrimental to the children. *See* Iowa Code § 232.116(3)(c) (providing that the court need not terminate parental rights if "clear and convincing evidence" shows "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). The record does not support such a finding. As the juvenile court noted, any sadness the termination may cause the children does not outweigh the long-term hardship and neglect they would likely suffer in the mother's care. Termination is in the children's best interests.

**AFFIRMED.**

Ahlers, J., concurs; Vaitheswaran, P.J., dissents.

**VAITHESWARAN, Judge** (dissenting).

I respectfully dissent. The department of human services intervened in January 2018, when the father assaulted the mother in front of one of the children. The mother was pregnant with their second child. The father continued to physically and mentally abuse the mother over the ensuing two years.

The department reported that the father "punched [the mother] in the butt causing her back injury," which led to having the children exchanged from one parent to the other in public places. Later the same year, the department reported that the father asked the mother to leave the home and, when she did not, he "forc[ed] her to leave by grabbing her and pulling her out of the home." The mother "was observed to have bruising on her jawline." A year later, the department reported that the mother recorded the father "hollering at her in a manner that was completely inappropriate." Following that incident, the mother committed to divorcing her husband.

At the time of the termination hearing, the mother (1) had her own apartment and had spoken to the landlord about upgrading to a two- or three-bedroom apartment if the children were returned to her care; (2) had secured employment and was receiving job training; (3) had no alcohol or drug dependency issues; (4) testified that the State dismissed a child-endangerment charge; (5) testified to an improvement in a yet-to-be diagnosed condition involving pain in her bones that previously limited her ability to interact with the children; (6) had scheduled an appointment for an assessment of her physical condition and testified to seeing a chiropractor several times; and (7) was meeting with a counselor once a week and taking medication to treat depression. The State did not dispute these assertions.

A domestic abuse program supervisor who had worked with the mother for several years reported she had "no concerns about [the mother's] mental health, ability to get around physically and care for herself[,] and her children or her having any desire to rekindle a relationship with the" father.

As for the department's concerns about the mother's supervision of the children, the service provider who supervised visits reported that the mother heeded her advice to take both children to the bathroom when one needed to go, prohibit the children from playing with toys that presented a choking hazard, and hold the children's hands when outside. The service provider also reported that the mother had "good interactions with the kids." And, shortly after the termination petition was filed, the service provider reported "no concerns of physical abuse, emotional abuse, sexual abuse, or neglect toward" the children. Finally, in the reporting period preceding the termination hearing, the service provider reported the mother was having supervised visits with the children in her home, which was "furnished appropriately and was clean."

Unfortunately, the COVID-19 pandemic prevented the mother from demonstrating her independent parenting skills on a sustained basis, with many visits being held by video. Because the mother made marked improvements in her compliance with department expectations notwithstanding the pandemic, I would conclude termination was not in the children's best interests and I would reverse the termination decision and remand for further proceedings.